This closes the evidence, so far as it is material to state it, and which I have thus been both tedious and particular in recapitulating from my notes, taken on the hearing, because I think it affords a more accurate conception of the mental weakness, character and condition of the petitioner than any general description which could be given of him. *318 The decided weakness and imbecility of his intellect by nature cannot be doubted, after reading the testimony; but whether it was such a degree of mental infirmity as would constitute him an insane party, within the meaning and’intention of the second section of the chapter in the Revised Code before referred to, is not a question so easily and readily answered in the affirmative. The words of that section áre: “ The said court shall have sole cognizance to decree marriages null and void which are prohibited by law for consanguinity, or affinity, or between a white person and a negro or mulatto, or where either of the: parties had, at the time of the marriage, another husband or wife living; or where either of the parties was at that time insane.” This last clause is concise, but it contains all that is to be found in the law which can possibly have any relation to this case. Was, then, the petitioner insane at the time of the marriage, within the meaning and contemplation of this clause in the act ? It is true, as has been said, that the solution of this question does not depend so much on the ordinary or popular signification of the word as on its legal sense, the sense in which it is employed in the books, and that Lord Coke classifies both idiots and lunatics as insane persons; the former, as he defines them, being so from birth, and the latter from accidental or supervening causes,.usually attended with lucid intervals; in which respect in particular they differ from the former. But according to his quaint and familiar definition of an idiqt, he ranks him, we think, much beneath the grade of the petitioner’s stolidity and imbecility, feeble as his intellectual capacity has been proved to be; for he defines an idiot to' be “ one who does not know his own, father or mother, brothers and sisters, cannot tell the days of the week, nor count ten.” But the petitioner knew his father and uncle, and his trustee, and even the nature of his office, and quite surprised one of the witnesses by the-degree of shrewdness and intelligence which he exhibited on one occasion, when speaking to him on the subject of the legal relation which he bore to him, although, as others *319 have proved, he could never learn to count more than five. Independent of this distinction, however, we do not consider, upon a review of the whole evidence, and upon the authority of the adjudged cases in the ecclesiastical courts of England on this question, where the validity of marriages has been frequently assailed on this ground, that the petitioner was incompetent to contract matrimony, or that his mental weakness or deficiency of understanding amounted to that degree of incapacity or unsoundness of mind contemplated hy the act, which would absolutely disqualify him from entering into a valid contract of that nature. It would be dangerous, perhaps, as well as difficult, to prescribe the precise degree of mental vigor, soundness and capacity essential to the validity of such an engagement; which, after all, in many cases depends more on sentiments of mutual esteem, attachment, and affection, which the weakest may feel as well as the strongest intellects, than on the exercise of a clear, unclouded reason, or sound judgment, or intelligent discernment and discrimination, and in which it differs in a very important respect from all other civil contracts.
On the other and additional ground, alleged in the petition for the divorce, that is to say, that he was intoxicated at the time the ceremony was performed, and that he was made so by those who had an interest and an object, by discreditable arts, to bring about what we must certainly call a discreditable match for all concerned in it, it is scarcely necessary to remark, that although drunkenness is sometimes called voluntary madness, it is not the madness referred to in this section under the denomination of insanity, even if we were satisfied from the evidence, which we are not, that the petitioner was too much intoxicated at the time to comprehend and understand the nature and obligation of the engagement and relation he was entering into. hTeither is it competent for this tribunal to take into consideration, in connection with the two grounds above adverted to, the alleged fraudulent design and circumvention hy which the petitioner was inveigled into the mar *320 riage, on the part of those whom he has implicated in the transaction. The proof on this point is not conclusive, although there is enough, in the facts detailed in regard to the procurement of the marriage license and the condition in which he was taken by Hearn and the father, to his house, for the purpose of marrying his daughter, to show an indecent zeal on their part to accomplish their object, and to induce a strong suspicion of the fraudulent design and combination alleged against them in the matter. But if we are forbidden, under all the facts proved, to pronounce the petitioner insane, in the language of the statute, then no circumstances of fraud or aggravation, trick, combination, or circumvention, however gross, indecent or disreputable may have been the means adopted to bring about the marriage, can give us jurisdiction to divorce the parties. As we have before observed, our jurisdiction in the premises is a special and limited one, and being confined to this single inquiry, we cannot enlarge it by reason of any hardship, injustice, fraud, imposition, or deception which may have been practised upon the party, so as to afford him the relief which he seeks, unless we could say he was insane; and then these circumstances would he entirely unnecessary. We are therefore constrained to refuse the application and to dismiss the petition.
Moore, McFee, and C. S. Layton, for the petitioner.
W. Saulsbury, for the respondent.